[No. 12227. Department Two. September 27, 1915.]

JOHNSON-LIEBER COMPANY, *Respondent*, v. BERLIN MACHINE WORKS, *Appellant*.[1]

LANDLORD AND TENANT—EVICTION—WHAT CONSTITUTES—ACCESS— ACTS OF THIRD PERSON—RENT—DEFENSES. In the absence of covenants in a lease of a warehouse as to an attached six foot loading platform, used for ingress, three feet of which extended over adjoining railroad property, the act of the railroad company in cutting off half of the platform does not amount to constructive eviction by the lessor, who is not presumed to have control of means of ingress extending beyond his own premises, although the loss of the platform made the leased premises less useful to the tenant's particular purposes; hence the same is not a defense to an action for the rent.

Appeal from a judgment of the superior court for Spokane county, Mills, J., entered March 28, 1914, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*Nuzum, Clark & Nuzum (Geo. H. Armitage,* of counsel), for appellant.

*Smith & Mack,* for respondent.

FULLERTON, J.—On June 22, 1910, the respondent, Johnson-Lieber Company, leased to the appellant, Berlin Machine Works, for a term of five years, at a stated monthly rental, certain property described as follows:

"The west half of the main floor of the warehouse situate on lot five (5) block twenty-nine (29) Railroad addition to the city of Spokane Falls (now Spokane), Washington, which has been leased by the party of the first part from Homer J. Shinn and wife, except space at the stairway so that the stairway may be freely used by the party of the first part for persons going up and down, and for carrying of material of all kinds up and down the stairway."

The lot described in the lease abutted upon lands belonging to the Northern Pacific Railway Company, on which that

[1]Reported in 151 Pac. 778.

company had constructed a railway track. One side of the building described paralleled this lot line some three feet back therefrom, and between the building and the railway track a platform had been constructed which extended the full width of the building and outward therefrom some six feet; the outward half of the same being upon the railway company's property. Some time in November or December, 1912, the railway company found it necessary to remodel its tracks in front of the building, and in doing so, cut off the platform even with the lot line and moved their tracks over in the same direction a corresponding distance. The appellant specialized in sawmill machinery, and used the leased premises as a storage warehouse wherein it kept in stock the various machines and fixtures adapted to that trade. Prior to the cutting down of the platform, all of such machinery was taken from the cars to the building and from the building to the cars over this platform. After that event, it was found that the larger pieces of machinery could not be so handled owing to the narrowness of the platform, and to load and unload such pieces it was necessary to take them through another door of the warehouse, which required their being carried some distance on trucks, at an additional cost over the original mode of loading of from twenty dollars to twenty-five dollars for each piece. The appellant paid the rentals up to and including the month of March, 1913, and vacated the premises in June of the same year.

This action was begun in January, 1914, to recover the stipulated rentals accruing between the month of March and the time of the commencement of the action. In its answer to the complaint, the appellant waived defense as to the rentals accruing between March and June, the period it had remained in possession of the premises without paying rent, paid the amount thereof, together with the costs of the action then accrued into court, and set up the fact of the changed condition of the building as a defense to a further recovery. The trial court found that the change in the condition of the plat-

form did not amount to an eviction, and allowed a recovery for the rentals demanded in the complaint. This appeal is prosecuted from the judgment entered.

It will be observed from the terms of the lease that the respondent did not purport to lease to the appellant any part of the platforms surrounding the building described, nor were there any apt words in the lease from which it can be said to include anything outside of the bare property described. Again, it will be observed that the lease does not specify the purposes for which the warehouse is to be used. From the fact that the building is a warehouse, it can be inferred that the lessee intended to use it for the purposes for which such buildings are commonly used, namely, as a place for the safekeeping of goods or merchandise, or for the storage of merchandise not yet ready for market; but it can hardly be presumed that the lessor was bound to know the character of the goods or merchandise the lessee intended to keep therein. Nor is the lease aided in this respect by the record in the case. It was alleged in the complaint that the lessor knew, at the time the lease was executed, the particular purposes for which the building was to be used, but this was denied in the answer and the proofs are silent on the question. If, therefore, anything is to be added to the bare property described in the lease, it must arise from the reasonable necessities of the case. There are, of course, certain of such things that arise from all leases of real property. A building would be useless to the lessee unless a means of access is provided to and from the building and the public highways, and the lessor has the right to insist that the customary ways open when he leased the building will not be interfered with by the landlord during the time of the lease, and generally he has a remedy if such ways are interfered with by the lessor. But the lessor is not presumed to have control of the means of ingress which extend beyond his own premises, and the courts generally hold, if such means are obstructed by the rightful owner, no right accrues to the lessee against

the lessor because of such obstruction, unless the lessor has specially contracted that the ways shall remain unobstructed.

Such is the effect of our own cases. In *Hockersmith v. Sullivan*, 71 Wash. 244, 128 Pac. 222, the defendant leased to the plaintiff certain premises bordering upon Madison street, in the city of Seattle. While the plaintiff was in possession, the city graded the street in front of the premises, cutting down the street to a depth of some eighteen feet, rendering the building inaccessible and useless for the purposes for which it was leased. It was held that this was not such an eviction as would entitle the plaintiff to recover damages against the defendant. Passing upon the question, this language was used:

"It is next argued that the court erred in sustaining the defendants' demurrer to the first and third causes of action stated in the amended complaint. The first cause of action alleges that the city ordered the street graded in front of the leased premises, and employed a man to do that work. It is not alleged that the landlord had anything to do with this work; it was done by the city or by its authority. The landlord was powerless to prevent the work, even if he desired to do so. No claim is made that the leased premises were taken by the city or by any one, but simply that the street was cut down so that the premises were rendered useless. If this work of the city or its employees was wrongful and resulted in the property becoming useless to the plaintiffs, the lessors, or the defendants in this case, were not liable for such wrongdoing. *Schilling v. Holmes*, 23 Cal. 227 ; *Branger v. Manciet,* 30 Cal. 625. A lease granting to the tenant quiet enjoyment does not insure against third parties who are wrongdoers."

In *Ralph v. Lomer*, 3 Wash. 401, 28 Pac. 760, it was said:

"As a general rule the acts of the landlord, in order to amount to a constructive eviction of his tenant, must be such a physical interference with the possession of the tenant, under color of right, as to deprive him of the beneficial enjoyment of the demised premises, in consequence of which he abandons the same. We find no clearer statement of the law

upon this question than that made by Endicott, J., in *DeWitt v. Pierson,* 112 Mass. 10, which is as follows:

" 'It is well settled in this commonwealth, that to constitute an eviction there must be either a physical ouster of the tenant by the landlord, or some act done by him on the premises, with the intent of depriving the tenant of the enjoyment and occupation of the whole or part of the same, to which the tenant yields the possession, within a reasonable time, and in either case the rent is suspended.' "

See, also, *Jemo v. Tourist Hotel Co.,* 55 Wash. 595, 104 Pac. 820, 30 L. R. A. (N. S.) 926.

The act of cutting away a part of the platform in this instance was not the act of the landlord. The part cut away being upon the land of another, the landlord could neither prevent nor prohibit the act. Since this part of the platform was not upon the leased premises, and since the landlord did not covenant that it should remain as it was, we think it must follow that its removal did not amount to an eviction, even though the premises were thereby rendered less useful to the lessee than they were before its removal.

The appellant cites and relies upon the case of *Lindbloom v. Berkman,* 43 Wash. 356, 86 Pac. 567, but we cannot think the case in point. There the landlord leased to the tenant the second, third, and fourth floors of a certain building, reserving the right to "change, alter or repair the stairway" leading to the premises. It was held that the landlord could not, under the lease, so alter or obstruct the entrance way so as to render it less attractive than it was when the lease was entered into. But the entrance on the landlord's premises, was the only means afforded for entering the leased part of the building, and the terms of the lease made it clear that the intention of the parties was that the way should be used with the leased portion of the building. Under these conditions, it was properly held, we think, that the landlord could not obstruct the way or use it for purposes other than as an entrance way. But the act complained of in the case at bar, was not, as we have said, the

act of the landlord, but was the act of a stranger on lands of its own not included in the lease, and was an act which the landlord could not control and one which it did not covenant against. These differences, we think, render the rule of the case inapplicable.

The cases cited from other jurisdictions are similar to the case from this court last cited, and are distinguishable on the same principle.

The judgment is affirmed.

MORRIS, C. J., ELLIS, and MAIN, JJ., concur.